Emmanuel Bass
1139 Louisville Ave
St Louis, MO 63139
Phone: (314)6249096
Email: emmanuelbass2020@gmail.com
Plaintiff, Pro Se

FILED
SEP 28 2026
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

PF (Paid)

**EMMANUEL BASS**, an individual,
*Plaintiff - Pro se,*
v.

**OPENAI, INC.**, a Delaware nonprofit corporation; OPENAI, LP., **OPENAI GP, LLC.**, a Delaware limited liability company; **OPENAI STARTUP FUND GP I, LLC**; **SAM ALTMAN**, an individual; **ANTHROPIC PBC**, a Delaware public benefit corporation; **DARIO AMODEI**, an individual; **xAI CORP.**, a Nevada corporation; and **ELON MUSK**, an individual,
*Defendants.*

Case No. CV26-11015 AGT

Judge: Hon. Honorable Yvonne Gonzalez Rogers

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, UNJUST ENRICHMENT, UNFAIR COMPETITION, AND INJUNCTIVE RELIEF**

JURY TRIAL DEMANDED

**TABLE OF CONTENTS**


- I. **INTRODUCTION**
- II. **JURISDICTION AND VENUE**
  - A. Subject Matter Jurisdiction
  - B. Personal Jurisdiction
  - C. Venue
- III. **STATEMENT OF FACTS**
  - A. Plaintiff's Original Conception and Prototype Development
  - B. Development Timeline, Academic Outreach, and Research Documentation
  - C. Unauthorized Incorporation and Exploitation by Defendants OpenAI, Anthropic, and xAI (Grok)
- IV. **LEGAL STANDARD**
- V. **ARGUMENT**
  - A. Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (18 U.S.C. §§ 1831–1839)
  - B. Trade Secret Protection of Unpatented Concepts Under Supreme Court Precedent
  - C. Unfair Competition and Misappropriation Under Lanham Act § 43(a) and FTC Act § 5
  - D. Copyright Act Protections and Constitutional Safeguards
  - E. Entitlement to Injunctive Relief and Statutory/Exemplary Remedies
- VI. **CONCLUSION AND PRAYER FOR RELIEF**
- **CERTIFICATE OF SERVICE**

**TABLE OF AUTHORITIES**

Cases

- Aronson v. Quick Point Pencil Co., 440 U.S. 257 (1979)
- Ashcroft v. Iqbal, 556 U.S. 662 (2009)
- Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)
- Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989)
- eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006)
- Eldred v. Ashcroft, 537 U.S. 186 (2003)
- Erickson v. Pardus, 551 U.S. 89, 94 (2007)
- FTC v. Sperry & Hutchinson Co., 405 U.S. 233 (1972)
- Goldstein v. California, 412 U.S. 546 (1973)
- International News Service v. Associated Press, 248 U.S. 215 (1918)
- Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974)
- Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)
- PepsiCo, Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995)
- Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984)
- Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)
- Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc. (9th Cir. 2025)

**Statutes and Constitutional Provisions**

- U.S. Const. art. I, § 8, cl. 8 (Intellectual Property Clause)
- U.S. Const. amend. V (Takings Clause)
- Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831–1839
- Federal Trade Commission Act § 5, 15 U.S.C. § 45
- Lanham Act § 43(a), 15 U.S.C. § 1125(a)
- Lanham Act Remedies, 15 U.S.C. § 1117(a)
- Copyright Act, 17 U.S.C. §§ 102(a), 106, 501, 502, 504
- Judicial Code Jurisdiction Provisions, 28 U.S.C. §§ 1331, 1338(a)-(b), 1367(a), 2201
- Judicial Code Venue Provisions, 28 U.S.C. §§ 1391(b), 1400(a)

## I. INTRODUCTION

Plaintiff Emmanuel Bass ("Plaintiff"), appearing *pro se*, respectfully submits this legal brief in support of his claims against OpenAI, Inc., OpenAI, LLC, OpenAI Group PBC, OpenAI OpCo, LLC, OpenAI Startup Fund GP I, LLC; (collectively, OpenAI) Sam Altman, Anthropic PBC (Anthropic), Dario Amodei, Daniela Amodei, xAI Corp. (xAI/Grok), and Elon Musk (collectively, "Defendants").

This intellectual property cause of action arises from the unlawful trade secret misappropriation, unauthorized use incorporation, and unfair commercial exploitation of the Plaintiff's original intellectual creations. Driven by personal challenges with reading speed and a vision to make reading easy and accessible for the benefit of all people, Plaintiff created and prototyped an architectural digitalize book library framework with manual audiovisual text script demo auto-pen summaries, voice, image, video generation, with the goal of automating the entire library and information access ecosystem with potential integration of the use of artificial intelligence with generative search response bar functionality.

## II. Jurisdiction, Venue, and Governing Procedural Standards

### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiff's federal statutory claims pursuant to 28 U.S.C. §§1331 (Federal Question Jurisdiction) governing civil actions arising under the laws and Constitution of the United States and 28 U.S.C. § 1338(a)-(b) (Intellectual Property Jurisdiction), granting exclusive original jurisdiction over civil actions relating to patents, copyrights, trademarks, and statutory unfair competition and 18 U.S.C. § 1836(c) (Defend Trade Secrets Act Jurisdiction), granting federal jurisdiction over civil trade secret misappropriation claims. 28 U.S.C. § 2201, authorizing this Court to declare the legal rights, status, and ownership interest of the parties in an actual controversy. The Court has supplemental jurisdiction over any related state law claims, common law trade secret misappropriation, unjust enrichment, as these claims form part of the same controversy under Article III of the U.S. Constitution.

### B. Personal Jurisdiction (multiple defendants)

This Court has personal jurisdiction over each Defendant because the first Defendant OpenAI, Inc. and OpenAI, LLC is incorporated in Delaware but has its principal place of business in San Francisco, CA. This Court has personal jurisdiction over Defendant Anthropic; it maintains its principal headquarters within the jurisdictional district of this court in San Francisco, CA. Defendant xAI/Grok maintains significant operational facilities and executive headquarters at Palo Alto, CA subject to the jurisdiction of this court pursuant to Cal. Civ. Proc. Code § 410.10 and constitutional due process standard requirements.

### C. Venue

Venue herein is proper in this District under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because Defendants OpenAI and Anthropic reside in this District, and both have regular and well established places of business in this District and have committed acts of infringement activities here, and Grok conducts

substantial business activity within this judicial district. Venue is also proper for all the three Defendants because substantial part of the events or omissions giving rise to the claims occurred in this District.

**D. Governing Pleading Standards and Ninth Circuit DTSA Specificity Rule**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must represent sufficient factual matter, accepted as true, to state a claim for relief that is plausible prima facie (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under liberal pro se pleading standards, individual filings must be held to less stringent standards than formal pleadings drafted by attorneys.

When it comes to examining the merits of trade secret claims under the Defend Trade Secrets Act within this Circuit, the Ninth Circuit ruled in Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc. (9th Cir. 2025) that the federal DTSA does not require a plaintiff to identify allegedly misappropriated trade secrets with "reasonable particularity" at the pleading stage prior to discovery. The Ninth Circuit established that while Section 2019.210 of the California Uniform Trade Secrets Act (CUTSA) imposes prediscovery strict requirements in state court level, at the same time, a DTSA claim in federal court level is usually governed exclusively by standard Federal Rules of Civil Procedure. The question of whether the trade secret in question which the Defendants took to be identified with "sufficient particularity" under the DTSA is a factual issue which should be properly resolved at summary judgment or trial, not as an early discovery sanction or pleading bar. Further, the Supreme Court has explicitly mandated that pleadings filed by pro se litigants must be held to 'less stringent standards than formal pleadings drafted by lawyers.' Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

## III. STATEMENT OF FACTS

**A. Architecture of the Concept and Prototype Development**

Moved by personal struggles with reading speed and its heavy impact on me as the Plaintiff alongside limited access to both traditional physical and online libraries' access. Through the plaintiff's own research most people were not reading as they suppose and this goes to show that most books on library shelves are sitting unused and collecting dust, and bookshelves in many homes serve as decoration. Besides, that libraries are inaccessible when closed, some immediately needed information is not always readily available, since people move all the time and travel very often they cannot carry along all their books with them in every journey of their travels, and people occupied with normal day to day work find it difficult to finish ready or listening to an entire books.

For this reason, Plaintiff did not settle for things as they are but thought that something better can be done for the good of all people and came up with the concept to make reading easy and also make information accessible not limited by time and location via a conceived artificial intelligence powered digital knowledge platform with real time search capabilities. And this supported by the recognition that contemporary search engines were not well organized with summarized information and full of loose links hyperlinked indexes instead of direct summarized knowledge response system, Plaintiff came up with a unique architectural new library platform design with presentation slides with the total aim to digitize all book collections and all

academic materials for easy access and because of bereft of resource and computer programming know-how. All of the initial works were manually created with text scripts "auto pen" summarization audiovisual, voiceovers, images, and videos demos.

The concept of 24/7 digitized library framework design with automated database with instant information retrieval capacity for all ingested books and academic publications to bridge the physical library hours and location limitations. Another function is the generative search result interface design with tailored query with response auto pen summary response rather than common static web links. As aforementioned, lacking starting capital and formal software engineering experience constrained the Plaintiff's ability to build a fully functional library platform, in spite of this, the Plaintiff still assembled manual prototype demonstrations of the vision of the project. Plaintiff used manually produced text summary scripts from books consistent with the traditional fair use standards, use manual voiceover and manual image designs and video making to compile a functional audiovisual prototype overview with the ultimate goal to automate all of the process through artificial intelligence.

**B. Outreach and Disclosure Timeline**

The library project started in Michigan and due to unbearable hardship the Plaintiff relocated to Missouri with the goal of a fresh start in life (after being unfairly targeted and prematurely cut off from law school two semesters away from graduation) and also with the goal to form a development team and other relevant partnerships to bring the project to reality. Since the plaintiff lacked the resources to hire a team of experienced software developers, Plaintiff attended multiple innovation social networking events in St. Louis Venture Cafe (2020 – 2021) to pitch the platform's vision paradigms to potential software developers and would-be investors but all this proves to no avail. So, the Plaintiff enrolled in an MA graduate program at Washington University in St Louis (University College 2022 - 2023) in an attempt to find the best students to help with the first version of the library project but could not find any help there , and besides, Plaintiff applied for a grant offered by the McKelvey Engineering School to fund the computer science student developers who would accept the challenge to work on this unique platform.

The grant was not approved on the basis it was a business idea and now no student wants to do it for free. The plaintiff met with the head of the computer science department on artificial intelligence for platform feasibility and Campus Library leadership about how to obtain the fair use or licensing books and academic materials for this new library project but all these meetings did not move a needle. During this time, the Plaintiff had a temporary wordpress website to display the audiovisual video demos but following the unexpected disruption of the platform hosting, everything was lost except the original video demos of the Plaintiff maintained and preserved and even shared few demos on Facebook. Not giving up, the Plaintiff again enrolled at the MBA program (2023 - 2024) in the hope of finding talented and hungry students there; this became a setback instead of step-forward because no one there was excited about this library project, on top of that because of University sanctioned discrimination, unfair treatment and defamation (because it failed to maintain a conducive learning environment which was a duplicate of the Plaintiff's prior experience in Law school) made it nearly impossible to build a team around the project on campus and even outside of campus (2024 - Present).

**C. Commercial Extraction by OpenAI, Inc., OpenAI, LLC, Anthropic, and xAI**

As already mentioned, following Plaintiff's outreach, prototype demonstrations, and web disclosures, Defendant OpenAI via ChapGPT deployed commercial generative AI systems incorporating Plaintiff's exact architectural concept: OpenAI, Inc./OpenAI, LLC (ChatGPT): Released an interactive conversational search interface utilizing auto-pen text summaries, directly mirroring Plaintiff's prototype designs. Anthropic (Claude AI): Founded by former OpenAI employees Dario Amodei and Daniela Amodei alongside other OpenAI employees. Anthropic also deployed Claude AI, mirroring the same conversational playbook summarization, and digitized knowledge access. And xAI Corp. (Grok AI): Founded by Elon Musk (co-founder of OpenAI), xAI released Grok AI, incorporating real-time generative search bar engine, automated knowledge response, text summarization, image, and video generation capabilities also mirroring the original concept of the Plaintiff audiovisual demos.

**D. Pre-Litigation Demand Letters and Documented Harm**

Earlier this year in June 2026, Plaintiff issued formal pre-litigation demand letters to Sam Altman (OpenAI ChatGPT), Dario and Daniela Amodei (Anthropic Claude), and Elon Musk (xAI Grok), detailing the unauthorized incorporation of his trade secret idea framework concept and requesting amicable settlement. All of the above Defendants failed to acknowledge the receipt of the letters, failed to respond and failed to compensate the Plaintiff for the utilization of the Plaintiff's trade secret architectural design concept. Defendants' inactions have endangered the life of the Plaintiff, loss of freedom the Plaintiff once enjoyed, caused him severe economic loss, homelessness, professional unemployability, public stalking, public humiliation, eviction, vehicle repo, unpaid bills, student loan debts and undue personal hardship.

**V. LEGAL STANDARD**

**A. Implications of Trade Secret, Property Rights, and Federal Non-Preemption**

The United States Supreme Court has long established that unpatented technical concepts, functional designs, and trade secret compilations remain fully protectable under federal and state law. It is obvious that the Plaintiff's Project Vision included the original library platform concept, text summarization format, audiovisual synthesis method, generative integration architecture, and expressive prototype elements qualifies as protectable trade secret information under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831–1839 (particularly the civil remedy in § 1836(b) a trade secret owner may bring a civil action if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce) and the full remedies provision in § 1836(b)(3), which expressly authorizes (A) injunctive relief, (B) damages measured by actual loss plus unjust enrichment not taken into account in computing actual loss, (C) exemplary damages up to twice the award for willful and malicious misappropriation, and (D) attorney fees and costs (Plaintiff Pro se). The definitions laid out in 18 U.S.C. § 1839 further confirms the broad scope of this protection.

The U.S Supreme Court has long recognized the legitimacy and importance of such protection under prior court precedents. In Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 481–85 (1974), the Court held that trade-secret laws encourage innovation and the sharing of useful knowledge without conflicting with federal patent policy and this is a principle that directly protects the Plaintiff's architectural development design efforts despite lacking needed resources or a coding applicable background to the library project. The

Court's holding shows that even unpatented development efforts, technical designs, and secret workflows remain fully protectable under trade secret law regardless of whether they meet patentable novelty standards. Another similar Supreme Court holding in Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003–04 (1984), the Court confirmed that trade secrets constitute a form of property entitled to constitutional safeguards under the Fifth Amendment's Takings Clause, which applies squarely to the economic value the Plaintiff had lost through the incorporation of conceptual framework designs without just compensation from the Defendants. It is clear from the standpoint of the court's ruling that when commercial entities (OpenAI, Anthropic, xAI) absorb trade secrets without authorization, it constitutes as an act of taking and conversion of property under the Takings Clause. In this case, the Defendants especially ChatGPT under Sam Altman deliberately took and converted the Plaintiff's library project for commercial benefit followed by the other subsequent defendants Claude and Grok.

Furthermore, protection extends to original compilations, arrangements, and expressive demonstrations even when underlying materials are publicly available or used under fair-use principles. In Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262–67 (1979), the Court held that federal patent law does not preempt enforcement of trade secret rights or royalty agreements for unpatented ideas, supporting the Plaintiff's right to full protection and compensation for the unpatented innovative platform vision (federal patent law does not preempt trade secret rights in unpatented ideas). Though no agreement existed between the Plaintiff and the Defendants, yet the federal patent law does not interfere with the state's ability to enforce the legitimacy of trade secret rights concerning unpatented concepts like the library project and its potential commercial benefit. In Goldstein v. California, 412 U.S. 546, 559–61 (1973), the Court ruled that Intellectual Property Clause under Article I, Section 8, Clause 8 of the U.S Constitution does not preempt additional protections for creative elements outside its full scope, reinforcing that the Plaintiff's audiovisual prototypes and platform architectural creative designs remain protectable under applicable supplemental law and common law protections.

**B. Protection of Unpatented Creations and Common Law Misappropriation**

These principles, together with section 5 of the FTC Act (15 U.S.C. § 45), the Lanham Act's unfair competition provision (15 U.S.C. § 1125(a), and the misappropriation doctrine recognized in copyright principles for expressive elements in the Plaintiff's library prototypes (17 U.S.C. §§ 102(a) original works including audiovisual and compilations; § 106 — exclusive rights; §§ 501, 502, 504 infringement, injunctions, and damages), and equitable doctrines of unjust enrichment in International News Service v. Associated Press, 248 U.S. 215 (1918), fully supports my position and also see FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 239–244 (1972) (holding that Section 5 empowers the Commission to proscribe practices that offend public policy or are immoral, unethical, oppressive, or unscrupulous, even absent an antitrust violation, and that the FTC may protect consumer interests as well as competition). These actions further implicate my property interests under the Fifth Amendment, the Commerce Clause, and the Intellectual Property Clause (U.S. Const. art. I, § 8, cl. 8, as affirmed in Eldred v. Ashcroft, 537 U.S. 186 (2003) the Congressional power to extend copyright protections without offending the well established first Amendment principles), along with supplemental claims of unjust enrichment and implied contract as already discussed above.

Although no patent was obtained on my library project conceptual designs, Supreme Court precedent makes it clear that unpatented concepts and innovations remain eligible for robust protection under federal trade

secret and unfair competition laws. In Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989), the Supreme Court expressly affirmed that states and by extension federal courts applying the Defend Trade Secrets Act retain authority to protect against the misappropriation of valuable intellectual creations that Congress left outside the current patent regulatory scope, provided such enforcement does not create patent-like monopolies over public domain ideas. In addition, *International News Service v. Associated Press*, 248 U.S. 215, 239–42 (1918) ruling established the equitable misappropriation doctrine, ruling that where a party expends time, labor, and capital to gather and structure information or products, a competitor may not "reap where it has not sown" by taking that material at the point of commercial deployment under unjust enrichment principles and this is exactly what the Defendants have done and still doing it.

**C. Unfair Competition Standing and Commercial Benefits**

It is crystal clear that the Defendants have engaged in unfair competitive advantage since the Plaintiff herein lacks the means, human resource, and capital resources to fairly compete against the Defendants for the same commercial benefits. Therefore, the actions of the Defendants have harmed the Plaintiff and these four prong tests established in *Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)* is well suited to gauge the degree of harm (i.e likelihood of success on the merits, irreparable financial harm shown by the Plaintiff and prolonged sustained personal hardship, balance of equities favoring the original innovator, and public interest in encouraging foundational AI contributions),all these are applicable in this context.

Furthermore, *Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)*, and 15 U.S.C. § 1117(a) confirm standing and available damages, profits, enhanced awards, and fees that a party who suffers commercial harm from another's unfair exploitation of its innovative framework has standing rule under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) for any innovator who suffers commercial or reputational injury, because such injury falls within the zone of interests protected by the statute further supports the Plaintiff's standing and the availability of injunctive relief in this matter, even in the absence of a patent. Moreover, in *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 239–44 (1972) - The Supreme Court held that statutory unfair competition encompasses business practices that offend established public policy or operate in an unscrupulous, immoral, unethical, or oppressive manner. Similarly, the traditional equitable standards for injunctive relief articulated in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), applied with full effect to trade secret and unfair competition cases further strengthens the Plaintiff's legitimate request for an injunctive relief requiring fair compensation proportionate to the commercial value obtained from the misappropriation of the trade secrets.

## <u>VI. Argument</u>

**A. Trade Secret Misappropriation Under the Defend Trade Secrets Act (18 U.S.C. §§ 1831–1839)**

Plaintiff's auto-pen summarization engine, 24/7 digitized library system, audiovisual demos and generative search bar-result conceptual designs feature in the powerpoint slide qualify as protectable trade secrets under 18 U.S.C. § 1839(3).

Firstly, it is quite obvious that the Plaintiff's architectural design concepts have huge potential economic value which was not generally known to the public yet as the plaintiff worked tirelessly to find the right

people who would join this great cause and since the Defendants here have already practicalized the concept in real life and its generating tremendous economic value. This removes every iota of doubt that the Plaintiff's conceptualized designs have gigantic economic potential which could have been realized if the concept was not misappropriated by the defendants. Though all of the Defendants in question here were among the early pioneers of modern day generative AI and they have contributed tremendously in the advancement of the body of knowledge and their original goals was not making money or commercialization of the software products as seen today. Yet it is also clear that prior to Defendants' commercial launches, certain identifiable structural integration of real time text parsing, auto pen summarization, and direct generative knowledge summaries did not exist in commercial consumer facing software format when the Plaintiff's architectural design concepts were introduced, rather it what was made available as an open sourced platform by ChatGPT before the other Defendants Claude and Grok competed in the same niche.

Second, as a Plaintiff in this matter, reasonable care was undertaken with the project idea while attempting to recruit potential team members both in-person and via social media to help build the project and even submitted a pitch slidedeck to McKelvey Engineering School at Washington University in St. Louis under expected degree of academic confidentiality and purported grant review privacy. The slide decks in question contain certain platform design workflows that were never made available to the public, disclosing only conceptual summaries on public platforms while retaining core search bar generative text functionality as trade secrets. As already highlighted in *Kewanee Oil Co. v. Bicron Corp.*, trade secret protection remains intact even where disclosures occur in confidence or for limited use purposes. These circumstances were applicable in the disclosure and protection of the Plaintiff's work.

Third, Defendant OpenAI, Inc., from nonprofit to for profit OpenAI, LLC under the leadership of Sam Altman, acquired and utilized Plaintiff's trade secrets conceptual designs in some of the work of ChatGPT through improper means under 18 U.S.C. § 1839(5). This unauthorized use and conversion of OpenAI nonprofit mission to commercial profit generative software deployment constitutes intentional and deliberate trade secret misappropriation under federal law. Examining the circumstances surrounding the whole situation under the Ninth Circuit's binding precedent in *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.* (9th Cir. 2025), the Plaintiff is not normally required to plead trade secrets in the state law with "reasonable particularity" under Rule 12(b)(6) level.

Fourth,since the founding team of Anthropic/Claude were once former employees of OpenAI, the nonprofit now turned formidable competitors to OpenAI/ChatGPT. And also, the founder of xAI/Grok was also once a co-founding team member of OpenAI nonprofit who had left the organization to later found Grok to directly compete against OpenAI/ChatGPT this time not for nonprofit mission but commercial profit.Here, it is clear that although the Seventh Circuit in PepsiCo, Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995), has long recognized the inevitable employee or confounding member disclosure situation or scenario as a potential basis for threatened misappropriation,however California has rejected this doctrine. See Whyte v. Schlage Lock Co., 101 Cal. App. 4th 1443, 1462–64 (2002). Statutory wise, the Federal law longstanding principles imposed clear boundaries on the relief available. Under the Defend Trade Secrets Act, a court may enjoin actual or threatened misappropriation only on terms that do not "prevent a person from entering into an employment relationship," and any conditions placed on such employment "shall be based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i).Consistent with this statutory boundary and with the Supreme Court's recognition that state

trade secret protections remain available alongside federal law, see Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 491–93 (1974).

Here, Plaintiff does not seek to limit Defendants' ability to fully compete or from working in the same technological ecosystem. Rather, Plaintiff seeks a narrowly tailored relief based on reasonable grounds that the two other Defendants, a former OpenAI employee(s) Dario Amodeo and OpenAI original co-founding member Elon Musk, improperly mirrored the Plaintiff's proprietary design demo concepts originating from OpenAI/ChapGPT's initial use as a blueprint in the form of library database generative realtime search and response queries summary system,voice, video/image generation to launch Claude and Grok which all directly operated competing similar AI business. Serving as the Plaintiff, the revelation of core design demo pipeline concepts, auto pen summarization demos, and library generative search bar design meets the required threshold under Rule 8 notice pleading, reserving detailed evidentiary refinement for discovery and summary judgment. As already aforementioned, under 18 U.S.C. § 1836(b)(3), Plaintiff is entitled to injunctive relief, actual damages, unjust enrichment, exemplary damages up to twice the award for willful misappropriation, and reasonable attorney fees.

**B. Federal Unfair Competition Under Lanham Act § 43(a) (15 U.S.C. § 1125(a)) & FTC Act § 5**

Defendant conduct amounts to reverse engineering and a typical example of unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant OpenAI, Inc., OpenAI, LLC under Sam Altman, primarily took Plaintiff's original AI design library digitalized generative concepts, reintroduced them as their own creative inventions, and made huge profits under commercial brand ChatGPT and deviated from its original founding nonprofit mission to commercialize profit making venture and this was not their goal in the beginning.This misrepresentation is what attracted public interest on who the original creator of ChatGPT really was, despite Sam Altman sitting at the helm of ChatGPT's day to day operations of this powerful transformative AI powered tools. Under Lexmark International, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), a plaintiff standing within the zone of interests protected by the statute may recover for commercial injuries proximately caused by misrepresentation of origin and deceptive commercial practices.

Furthermore, Defendant OpenAI alongside Sam Altman's behavior truly violated the traditional norms of unfair trade practice standards stipulated in Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. In *Federal Trade Commission v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972), the Supreme Court affirmed that unfair competition covers a conduct that offends public policy or causes substantial, unavoidable injury to innovators and consumers. Here, it is undeniable that the Plaintiff is a victim of corporate extensive misuse of business power to harm the small innovators, inventors and creators without accountability. Therefore, Defendants' unauthorized commercialization of Plaintiff's work falls squarely within these protected practice zone limits, thereby entitling Plaintiff to applicable remedies under 15 U.S.C. § 1117(a).

**C. Federal Copyright Infringement (17 U.S.C. § 102 (a)) and Common Law Misappropriation**

The digitalized library project, audiovisual prototype demo designs, and architectural concepts, technical documentation are protected expressions under 17 U.S.C. § 102(a) and also under the doctrine of common law misappropriation. As already noted in the *International News Service case*, in an stance where an

affected party spends money, time, and labor to create an intellectual product, a competitor may not "reap where it has not sown" by taking that product at the point of commercial deployment. Defendant ChatGPT, mirrored Plaintiff's protected expressive AI design prototype concepts posted on Facebook, directly incorporated the auto pen generative digitalized library capabilities in the generative queries of ChatGPT, and subsequently imitated by Claude, and Grok which equals conversion and common law misappropriation.

**D. Constitutional Takings and Protection of Unpatented Innovation**

Under Necessary and Proper Clause of Article I, Section 8, Clause 8 of the United States Constitution granted Congress with elastic powers to promote the Progress of Science and useful Arts and thus artificial intelligence intellectual property generative capabilities and innovation falls under such protective framework for individual creators (also see *Eldred v. Ashcroft*, 537 U.S. 186; *Goldstein v. California*, 412 U.S. 546). Therefore, giving large corporations such Anthropic, OpenAI, Grok, with outstanding technological capabilities a free pass will swallow almost every unpatented creative works without appropriate compensation totally undermines the functionary purpose of the Intellectual Property Clause. As already noted in both the Bonito case and Aronson case, federal patent law does not preempt state and federal trade secret protections because they all exist to supplement each other's objectives. Additionally, the Plaintiff's library software prototype designs, developments and demos is impliedly a protected innovative property under the Takings Clause of the fifth Amendment of the United States Constitution (see *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986). Therefore, Defendant OpenAI/ChatGPT under Sam Altman actions was unauthorized and thus, constituted as an act of private property without just compensation as stipulated in the Constitution.

**VII. Entitlement to Injunctive Relief and Disgorgement Remedies**

It is clear that circumstances which give rise to the Plaintiff's cause of action meets all of four prongs test for immediate preliminary and permanent injunctive relief as highlighted under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) and *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) cases. First prong test: Irreparable Harm, the Plaintiff has suffered severe major damages stemming from the Defendants' exploitative actions of unauthorized trade secret use and has permanently closed the door for the Plaintiff's commercialization of the original creation of the generative library project because the market opportunity has already been taken over by the defendant (ChatGPT, Claude, Grok) and this has caused and continue to cause him irreparable harm. Second prong test: Inadequacy of Legal Remedies, legal remedies alone are not enough to resolve prevent the Defendants' complete erosion of the generative intelligence market, because of the daily growth of their users here at home and across the globe has made it difficult for any legal remedy to be taken to prevent further use of the Plaintiff's original architectural creative designs.

Third prong test: Balance of Equities, this approach completely favors the plaintiff because the market opportunity has already been taken over by the Defendants and there is nothing left for him to compete in similar market, and as a result the Plaintiff has suffered professional unemployability, homelessness, student debt, personal debt, and financial ruin whereas the OpenAI nonprofit, now turned for profit organization continue to amass huge profits in billions without ever giving the Plaintiff credit or his fair share for his creative inventions where it is due, and the same also applies to other Defendants (Anthropic and Grok). Fourth prong test: Public Interest, this ongoing issue has been a great interest for the public, because of the

public awareness of the issue has made life difficult for the Plaintiff, because he can no longer do some of the things he used to do, for instance going out in some public places due personal safety concerns. Therefore, it is very essential to preserve and protect the creative works of innovators from corporate greed and trade secret theft that totally protects individual innovations and encourages free market enterprise and fair commercial competition (*Kewanee Oil*, 416 U.S. at 481).

In addition to injunctive relief, Plaintiff is entitled to recover actual economic damages, exemplary damages equal to twice actual damages for willful and malicious misappropriation under 18 U.S.C. § 1836(b)(3)(C), and complete disgorgement of all unjust enrichment and profits realized by Defendant OpenAI as a result of his unlawful conduct and also followed by other Defendants Anthropic and Grok. Here, the evidence strongly shows that Defendant (OpenAI) misappropriation of Plaintiff's trade secrets was willful and malicious by the circumstances in which it was taken. Defendant Anthropic has every legal right to compete with his former employer OpenAI, however, it is also clear that technical information which can be linked to the library generative project concept was used in launching Claude to directly compete with OpenAI, and Defendant xAI/Grok, was present at the beginning in the OpenAI nonprofit mission but later founded Grok with similar technical information from OpenAI which now competes directly with OpenAI.

## VIII. Conclusion and Prayer for Relief

For the foregoing reasons, Plaintiff Emmanuel Bass respectfully requests that this Honorable Court enter judgment in his favor and against the primary Defendant OpenAI, Inc., OpenAI, LLC, Sam Altman, and other Defendants Anthropic PBC, Dario Amodei, xAI Corp., and Elon Musk, severally and jointly where necessitated by law by granting the following relief:

Declaratory Relief: Entry of a Declaratory Judgment under 28 U.S.C. § 2201 establishing Plaintiff Emmanuel Bass to have an equity participation agreement with OpenAI/Sam Altman (currently holds zero equity percentage stakes in OpenAI). The Plaintiff requested actual compensatory and exemplary damages from each of the Defendants for the harm suffered due to design commercialization, loss of market value for the conceptual designs, economic losses, public safety concerns, personal hardship and homelessness. Besides the Plaintiff herein requested to be awarded exemplary damages equal to twice the amount of actual damages pursuant to 18 U.S.C. § 1836(b)(3)(C) for Defendants' intentional trade secret misappropriation even to the extent of annihilating the Plaintiffs original idea concept. The Plaintiff asks this court to order Defendants to account and showcase all of the generated revenue profits as direct result of unjust enrichment obtained directly or indirectly from their unauthorized use of Plaintiff's architectural design prototypes concepts to determine appropriate settlement under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504. Plaintiff also asks this Court to grant all expense costs associated with this lawsuit, fees and other appropriate relief as the Court deems just, proper, and equitable.

DATED: September 23, 2026

RESPECTFULLY SUBMITTED,

/s/ Emmanuel Bass
Emmanuel Bass, Plaintiff Pro Se
Phone: 5137402827
Email: ebassf@outlook.com / emmanuelbass2020@gmail.com

## Certificate of Service

I hereby certify that on September 23, 2026, I have mailed all of the necessary document filings to be filed the foregoing PLAINTIFF'S COURT BRIEF AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, UNJUST ENRICHMENT, UNFAIR COMPETITION, AND INJUNCTIVE RELIEF with the Clerk of the Court using certified mail, which will send notification of such filing to all counsel of record registered to receive service of process for Defendants OpenAI, Inc., OpenAI, LLC, Sam Altman, Anthropic PBC, Dario Amodei, xAI Corp., and Elon Musk.

/s/ Emmanuel Bass
Emmanuel Bass, Plaintiff Pro Se